**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**BRENDA H.,**

      **Plaintiff,**

**vs.**                                **CIVIL ACTION NO. 2:23-CV-00631**

**MARTIN J. O'MALLEY,
COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

<u>**PROPOSED FINDINGS AND RECOMMENDATION**</u>

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered September 21, 2023 (ECF No. 2), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Brief and the Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 5, 6)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **GRANT** the Plaintiff's request for remand (ECF No. 5), **DENY** the Defendant's request to affirm the decision of the Commissioner (ECF No. 6); **REVERSE** the final decision of the Commissioner; and **REMAND** this matter back to the Commissioner for further administrative proceedings for the reasons stated *infra*.

**Procedural History**

The Plaintiff protectively filed her application for DIB on February 10, 2021 alleging disability beginning July 1, 2020 due to osteoarthritis, spinal stenosis, degenerative disc disease, "sleep apnea with CPAP", anxiety, panic attacks, depression, carpal tunnel, high blood pressure, and chronic acid reflux. (Tr. at 16, 178) Her claim was initially denied on August 26, 2021 and upon reconsideration on March 25, 2022 (Tr. at 16, 61-67, 69-74). Thereafter, the Plaintiff filed a written request for hearing on April 28, 2022 (Tr. at 94-95).

An administrative hearing was held on December 16, 2022 before the Honorable Nathan Brown, Administrative Law Judge ("ALJ") (Tr. at 32-60). On January 27, 2023, the ALJ entered an unfavorable decision (Tr. at 11-31). On July 31, 2023, the Appeals Council denied the Plaintiff's Request for Review, thus, the ALJ's decision became the final decision of the Acting Commissioner. (Tr. at 1-6)

On September 21, 2023, the Plaintiff brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1) The Defendant, (hereinafter referred to as "the Commissioner") filed a Transcript of the Administrative Proceedings. (ECF No. 4) Subsequently, the Plaintiff filed her Brief in support of her complaint (ECF No. 5); in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 6), to which the Plaintiff filed her Reply Brief (ECF No. 7). Consequently, this matter is fully briefed and ready for resolution.

**Plaintiff's Background**

The Plaintiff was 55 years old as of the alleged onset date, and considered to be a "person of advanced age" during the underlying proceedings. See 20 C.F.R. § 404.1563(e). (Tr. at 34) She

has a high school education, and last worked as a caregiver and a receptionist, both at light exertional levels (Tr. at 26, 52-53, 179-178).

## **Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether the claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities

and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 404.1520a(c):

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.

4

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 404.1520a(e)(4).

**Summary of ALJ's Decision**

In this particular case, the ALJ determined that the Plaintiff met the insured status requirements through December 31, 2022. (Tr. at 16, Finding No. 1) Next, the ALJ determined the Plaintiff satisfied the first step of the sequential evaluation process because she had not engaged in substantial gainful activity since the alleged onset date of July 1, 2020. (Id., Finding No. 2) Under the second inquiry, the ALJ found that the Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; osteoarthritis; status post-operative bilateral total hip arthroplasties; bursitis of the right hip; type II diabetes mellitus; and obesity. (Id., Finding No. 3) At the third inquiry, the ALJ concluded the Plaintiff's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 20, Finding No. 4)

The ALJ then found that the Plaintiff had the residual functional capacity ("RFC") to perform sedentary work except

> the claimant can frequently operate foot controls with the bilateral lower extremities. The claimant can occasionally climb ramps and stairs; occasionally balance stoop, kneel, and crawl; never crawl[1]; and never climb ladders, ropes, or scaffolds. The claimant can frequently work in extreme cold, frequently operate a motor vehicle and occasionally work around moving mechanical parts and at unprotected heights. The claimant cannot tolerate exposure to vibration.

(Tr. at 21, Finding No. 5)

At step four, the ALJ found the Plaintiff is capable of performing her past relevant work as a receptionist. (Tr. at 26, Finding No. 6) Finally, the ALJ determined the Plaintiff had not been

---

[1] The undersigned presumes this is a scrivener's error, but appears to have no bearing on the issues concerning this appeal.

under a disability since July 1, 2020 through the date of the decision. (<u>Id</u>., Finding No. 7)

**Plaintiff's Challenges to Commissioner's Decision**

The Plaintiff argues that that ALJ's fourth step finding is contrary to law because no mental limitations were included in his RFC determination, and failed to provide an explanation why they were omitted, thus frustrating meaningful judicial review. (ECF No. 5 at 3-7) Because the ALJ himself determined the Plaintiff had mild limitations in adapting or managing oneself, but did not address whether that impacted her ability to return to semiskilled work, this Court must guess as to how the ALJ concluded that she could (<u>Id</u>. at 7-10) Because of these errors, the Plaintiff asks the Court to remand for further administrative proceedings. (<u>Id</u>. at 10)

In response, the Commissioner contends that the ALJ reasonably explained why the Plaintiff's non-severe mental impairments did not result in work-related functional limitations, noting the ALJ's analysis set forth in the second step of the sequential evaluation process, including how the medical opinion evidence supported that conclusion. (ECF No. 6 at 9-16) The Commissioner argues that the evidence showed that the Plaintiff was able to maintain semiskilled work with her mental impairments in the past, and did not show any material worsening of these impairments during the alleged period of disability, indicating that the Plaintiff could return to her past relevant work as a receptionist. (<u>Id</u>. at 16-17) The Commissioner asks this Court to affirm the final decision because it is supported by the substantial evidence. (<u>Id</u>. at 17)

In her reply, the Plaintiff reiterates her arguments that the ALJ never explained how the Plaintiff's mild limitations in adapting and managing herself did not prevent her from performing her prior skilled work, depriving this Court of meaningful review. (ECF No. 7 at 1-3) Because the ALJ found the Plaintiff to have mild deficits in mental functioning, this generally has a more

serious impact on her ability to perform skilled work; if she is unable to return to past relevant work, and is limited to sedentary work, then she is disabled pursuant to the applicable grid rules. (Id. at 4-6). This error requires remand, and is most prejudicial, as the final decision postdates the Plaintiff's date last insured (Id. at 6)

**Relevant Evidence of Record**[2]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to the Plaintiff's arguments and discusses it below.

**The Medical Record:**

Mental Impairments:

During the relevant period, the ALJ noted the Plaintiff was not under the care of a professional counselor, psychiatrist, or other mental health clinician on a sustained basis. (Tr. at 19) Additionally, the Plaintiff did not require medical attention, emergency room evaluation, or involuntary psychiatric hospitalization for any self-harming activities, erratic or violent behaviors, altered mental status, anxiety or panic symptoms, passive suicidal thoughts, dissociative events, or symptoms of psychosis. (Id.)

The Plaintiff received treatment for her depression and anxiety along with her physical impairments through her primary care physician, Michael Taylor, M.D. The Plaintiff reported that Dr. Taylor prescribed her Prozac since at least 2017 (Tr. at 271). In his treatment notes, Dr. Taylor suggested the medication seemed to be working well and that her symptoms were stable while she

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings, which only concerns the Plaintiff's mental impairments.

was on it (Tr. at 425, 431, 437). Dr. Taylor indicated the Plaintiff had no mental deficits on examination and that she was otherwise alert and oriented during every visit (Tr. at 425, 431, 436, 449, 462, 583, 538, 594).

Records show that in July 2021, the Plaintiff went to the emergency room at Summersville Regional Medical Center, complaining of back pain (Tr. at 479). On examination, she was described as alert and oriented, and had normal mood, affect, memory, and judgment (Tr. at 482).

In August 2021, the Plaintiff attended a consultative internal examination with Deidre Parsley, D.O., at the agency's request (Tr. at 276-280). Dr. Parsley noted that the Plaintiff could understand conversations without difficulty (Tr. at 277). That month, the Plaintiff also attended a consultative psychological examination with Jerry Legg, M.A., at the agency's request (Tr. at 282-285). Mr. Legg noted that he had previously evaluated the Plaintiff for anxiety in 2015 (Tr. at 282-283). During the examination, the Plaintiff reported she had not had any panic attacks in over a year and stated that her depression was under control with Prozac (Tr. at 283). Mr. Legg observed that the Plaintiff was cooperative and polite; had normal speech; was alert and oriented; and displayed a euthymic mood, normal thought processes, normal thought content, no hallucinations, good insight, normal psychomotor behavior, normal judgment, no suicidal or homicidal thoughts, intact memory, normal concentration, normal persistence, normal pace, and normal social functioning (Tr. at 284). The Plaintiff told Mr. Legg she got along well with her family, attended church, had friends, enjoyed reading and interacting with her grandchildren, and spent her days doing household chores (Id.).

In July 2022, the Plaintiff attended an initial evaluation at University Hospital Center for back pain (Tr. at 508). On examination, she was alert, oriented, cooperative, and possessed normal

attention, concentration, and cognitive function (Tr. at 512). The following month, at an endocrinology visit, the Plaintiff again appeared alert and oriented and displayed a stable mood, stable cognition, and normal affect (Tr. at 536-537). In September 2022, at a follow up visit to University Hospital Center on her back pain (Tr. at 550), she was once again reportedly alert, oriented, and cooperative; showed no signs of confusion; and displayed normal speech, attention, concentration, cognitive function, affect, and behavior (Tr. at 567).

          <u>Prior Administrative Findings:</u>

          In August 2021, Debra Lilly, Ph.D., a State agency psychologist, reviewed the Plaintiff's medical records and found that the Plaintiff had no limitation in understanding, remembering, or applying information; no limitation in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing oneself (Tr. at 63-64). Dr. Lilly therefore concluded that the Plaintiff's mental impairments were not severe and did not find she had any work-related limitations (Tr. at 63-64, 66). In March 2022, Timothy Saar, Ph.D., State agency psychologist, reviewed the Plaintiff's updated medical records and concurred with Dr. Lilly's findings (Tr. at 71-72).

**Plaintiff's Function Reports:**

          As part of her disability application, the Plaintiff completed two Adult Function Reports describing her symptoms and daily activities (Tr. at 184-191, 232-239).  She indicated she had difficulty concentrating, completing tasks, remembering things, paying attention for extended periods, handling stress, and driving long distances (Tr. at 189-190, 237-238).  The Plaintiff also indicated she was independent with personal care, prepared her own meals, performed some household chores, went out daily and could do so unattended, drove a car, shopped, managed her

10

finances, socialized with others, and spent her time reading, doing puzzles, crocheting, and watching TV (Tr. at 185-188, 233-236). She stated she did not have problems getting along with other people and got along well with authority figures (Tr. at 189, 236-237).

**The Administrative Hearing:**

Plaintiff's Testimony:

At the hearing, the Plaintiff testified primarily regarding her physical impairments. She endorsed poor memory and the need for written reminders (Tr. at 51). However, she questioned whether her memory problems were simply age-related (Id.). She indicated she managed her stress with the prescription medication Prozac because "that does help a lot" (Id.).

Vocational Expert's Testimony:

The vocational expert classified the Plaintiff's past relevant work as a personal care attendant and receptionist were both performed at the light level of exertion, but the latter is customarily performed as sedentary (Tr. at 55). In response to the hypothetical scenario with limitations as outlined in the RFC finding, *supra*, the testified that the hypothetical individual would be able to perform her past work as a receptionist as customarily performed in the national economy (Tr. at 55-56).

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be

> somewhat less than a preponderance. If there is evidence to justify a refusal to direct
> a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d

640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving

conflicts in the evidence, however, the Court determines if the final decision of the Commissioner

is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th

Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape

their duty to scrutinize the record as a whole to determine whether the conclusions reached are

rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists,

the Court must affirm the Commissioner's decision "even should the court disagree with such

decision." Blalock, 483 F.2d at 775.

**Analysis**

> The Absence of Mental Limitations in the RFC Assessment:

The RFC determination is the "ability to do sustained work-related physical and mental

activities in a work setting on a regular and continuing basis." Social Security Ruling (SSR) 96-

8p, 1996 WL 374184, at *1. The RFC is a finding as to the most a claimant can still do in a work

setting despite her functional limitations. See 20 C.F.R. § 404.1545(a)(1). The RFC is an

administrative finding within the ALJ's exclusive jurisdiction. See Id. § 404.1546(c); see also Id.

§ 404.1520c(a) (instructing that ALJs will not defer to medical opinions or prior administrative

medical findings). The ALJ reviews "all of the relevant medical and other evidence" in the record

and is charged with resolving conflicts in the evidence. Id. § 405.1545(a)(3). See also SSR 96-8p,

1996 WL 374184, at *5.

There is no dispute between the parties as to the ALJ's finding that the Plaintiff's mental impairments were non-severe, and that she only had a mild limitation in adapting or managing oneself:[3] the ALJ noted that in her Function Reports, the Plaintiff reported having difficulty handling routine stress and experiencing disproportionate fear and/or panic when driving long distances by herself or when crossing over high bridges (Tr. at 19, 190, 238); the ALJ also noted that during mental status examinations, there was a lack of significant findings during this period, and that the Plaintiff has not been under the care of a professional counselor, psychiatrist, or other mental health clinician on a sustained basis during the relevant period for any medication management, counseling, cognitive behavioral, psychotherapy or other talk therapy treatment (Tr. at 19, 284, 482, 512; see also, 277, 425, 431, 436, 449, 462, 537, 555, 569, 583, 589, 594).[4] In addition, the ALJ observed that the record did not show that the Plaintiff required any emergent care for her mental impairments or experience any significant psychiatric event during the relevant period (Tr. at 19).

The ALJ also evaluated the opinion evidence provided by the State agency psychological consultants, summarized *supra*, finding them persuasive, as they were consistent with the totality of the medical evidence as well as with the Plaintiff's subjective allegations (Tr. at 19-20). As noted by the Plaintiff, the ALJ then observed that the limitations identified in the "paragraph B"

---

[3] 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00F(2)(b) provides that a "mild limitation" means a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited." In the other three mental functional areas, the ALJ found the Plaintiff had no limitations. (Tr. at 18)

[4] The ALJ cited the following exhibits: the mental status examination report provided by Mr. Legg; a treatment note from Summersville Regional Medical Center dated July 5, 2021; treatment notes from University Hospital Center dated July 21, 2022, September 12, 2022, and September 20, 2022; the consultative examination report provided by Dr. Parsley; several treatment records from the Plaintiff's primary care provider, Dr. Taylor, dated July 5, 2021, September 13, 2021, July 13, 2021, January 13, 2021, November 16, 2021, January 31, 2022, April 26, 2022, and September 15, 2022; and an office visit to UPC Bridgeport Endocrinology dated August 10, 2022.

13

criteria are not an RFC assessment, but are used to rate the severity of mental impairments in steps 2 and 3 of the sequential evaluation process, noting that at steps 4 and 5, the mental RFC requires "a more detailed assessment." (Tr. at 20) "The following RFC assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (Id.)

This Court has recognized that mental limitations identified using the psychiatric review technique do not necessarily indicate work-related functional limitations that must be present in the RFC assessment. See *Elaine M. v. Kijakazi*, No. 3:23-cv-00328, 2023 WL 6368980, at *8 (S.D. W. Va. Sept. 7, 2023), *report and recommendation adopted sub nom.*, 2023 WL 6368228 (S.D. W. Va. Sept. 28, 2023) ("[T]his District has recognized that mental limitations identified using the psychiatric review technique do not necessarily indicate work-related functional limitations that must be present in the RFC assessment") (citing *Wall v. Saul*, No. 2:20-cv-00460, 2021 WL 5225792, at *8 (S.D. W. Va. Nov. 9, 2021), *report and recommendation adopted*, 2021 WL 5230989, at *1 (S.D. W. Va. Nov. 9, 2021); *Hedrick v. Saul*, No. 2:20-cv-00449, 2021 WL 5230735, at *7 (S.D. W. Va. May 21, 2021) (citing Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015) (noting even a claimant's "moderate limitation in concentration, persistence, or pace at step three" may not "affect [her] ability to work" and thus "does not translate into a limitation in [her] RFC]")), *report and recommendation adopted*, 2021 WL 5230987 (S.D. W. Va. Nov. 9, 2021); see also, *Perry v. Colvin*, No. 2:15-cv-01145, 2016 WL 1183155, at *5 (S.D. W. Va. Mar. 28, 2016) ("[A]lthough some consideration is required, there is no requirement that the RFC reflect a claimant's non-severe impairments to the extent the ALJ reasonably determines such impairments do not actually create functional limitations . . ."); Britt v. Saul, 860 Fed.Appx. 256, 262 (4th Cir. 2021) ("While the administrative law judge did not specifically address [the plaintiff's non-severe

impairments] in the residual-functional-capacity analysis, neither our caselaw nor the regulations explicitly require this. The judge is only required to *consider* these non-severe impairments.") (*emphasis* in original).

Both parties find pertinent case law to support their respective arguments as they relate to the lack of mental limitations in the ALJ's RFC determination, and most of this jurisprudence comes from this very Court, suggesting a split within this District, though each case is factually nuanced to varying degrees. For instance, in *Shank v. Saul*, No. 3:20-cv-00444, 2021 WL 2467063 (S.D.W. Va. Jun. 11, 2021)(Eifert, M.J.), *report and recommendation adopted*, 2021 WL 2744550 (S.D.W. Va. Jul. 1, 2021)(Chambers, J.), the claimant presented with primarily physical impairments, and was found to have nonsevere mental impairments, just like the Plaintiff here. Another noted similarity between these cases is that in the area of adapting and managing oneself, the ALJ found only mild limitations. Id. at *8.  In *Shank*, the Court observed that the ALJ used the same language in the written decision at step 2 as the undersigned noted *supra*. Ultimately, the Court found substantial evidence did not support the RFC assessment, because the ALJ did not "provide any insight into why he did not assess any mental RFC restriction. Rather, the RFC assessment focuses almost exclusively on Claimant's physical impairments." Id.[5] That is precisely what happened in this case.

---

[5] The Court noted further: "The boilerplate statement that the RFC assessment reflects the degree of limitation that the ALJ found in the 'paragraph B' mental function analysis is an insufficient substitute for substantive analysis, and it does not provide the level of articulation necessary for meaningful review." Id. at *9.

The Plaintiff attaches another case in support of her argument (ECF No. 5-1) that this situation presented itself previously before the Court in *Jones v. Kijakazi*, No. 5:21-cv-00634, (S.D.W. Va. Sept. 22, 2022)(Eifert, M.J.), *report and recommendation adopted*, (S.D.W. Va. Nov. 28, 2022)(Volk, J.)(following *Shank* and remanding when the ALJ found mild limitations in two of the "paragraph B" criteria but then failed to mention his mental limitations after step 2).

As noted by the parties, in another matter brought before this Court, *Wall v. Saul*, No. 2:20-cv-00460, 2021 WL 5225792, at *8 (S.D. W. Va. Nov. 9, 2021)(Tinsley, M.J.), *report and recommendation adopted*, 2021 WL 5230989, at *1 (S.D. W. Va. Nov. 9, 2021)(Copenhaver, J.), the ALJ therein found the claimant had only mild limitations in all four broad categories of mental functioning, and also did not include any of those limitations in the RFC assessment.[6] Id. at *8. In that case, while the ALJ did not address the claimant's mental impairments or their resulting limitations any further beyond step 2, the Court found substantial evidence supported the RFC assessment, having observed that the ALJ "expressly stated that Claimant did not have 'any work-related mental limitations.' " Id.[7] There was no such express finding in this case, however.

There is no question that the ALJ in this case did not mention or address any of the Plaintiff's mental limitations after step 2. From the undersigned's review of this matter, in light of the rulings of other Courts within this District in cases that presented the exact same situation as the one here, the undersigned is once again compelled to find the same. See *Karen W. v. Kijakazi*,

---

[6] Notably, Mr. Wall had been treated for his mental health issues with a psychiatrist, and received a consultative psychological examination as it related to his claim for benefits.

[7] In another matter before this Court, substantial evidence supported an RFC assessment that failed to include any of the mild limitations found in the four broad areas of mental functioning, however, the ALJ therein addressed the minimal findings of both providers and the opinion evidence, noting they did not preclude any further work-related restrictions. *Hunt v. Kijakazi*, No. 1:21-cv-00265, 2021 WL 9076248, at *10 (S.D.W. Va. Dec. 9, 2021)(Eifert, M.J.), *report and recommendation adopted*, 2022 WL 2719968 (S.D.W. Va. Jul. 13, 2022)(Faber, J.). The Court applied the same rationale in finding an RFC assessment that did not include any of the mild limitations in each of the four areas of functioning in *Hedrick v. Saul*, No. 2:20-cv-00449, 2021 WL 5230735, at *7 (S.D.W. Va. May 21, 2021)(Tinsley, M.J.), *report and recommendation adopted*, 2021 WL 5230987 (S.D.W. Va. Nov. 9, 2021)(Copenhaver, J.). In *Hedrick*, the claimant, like the Plaintiff herein, did not receive any specialized mental health treatment during the period under review. However, in both *Hunt* and *Hedrick*, the undersigned notes that the ALJ continued the review of the claimants' mental impairments beyond the second step of the sequential evaluation process. See also, *Tammy R. v. Kijakazi*, 2023 WL 6122140, at *7 (S.D.W. Va. Aug. 31, 2023)(Tinsley, M.J.)(noting the ALJ explained at step two that the claimant's mental impairments were not severe and "did not result in work-related functional limitations, and, using the record evidence, explained why Claimant did not require mental restrictions in order to work."), *report and recommendation adopted*, 2023 WL 6130565 (S.D.W. Va. Sept. 19, 2023).

2023 WL 6289991, at *7-8 (S.D.W. Va. Jul. 31, 2023)(Aboulhosn, M.J.), *report and recommendation adopted*, 2023 WL 6282856 (S.D.W. Va. Sept. 26, 2023)(Johnston, C.J.). The undersigned previously noted that in *Karen W.*, just like in *Shank* and *Jones*, the ALJ here did not go beyond affixing the boilerplate concerning "paragraph B" criteria: while the ALJ acknowledged the mild limitations did not constitute an RFC assessment, and would "require a more detailed assessment" at subsequent steps in the sequential evaluation process, the ALJ never followed through on this. Although the ALJ provided an adequate explanation for why the Plaintiff has mild limitations in one area of mental functioning, there is no explanation for omitting it from the RFC assessment, necessarily resulting in the undersigned having to speculate as to why, thus frustrating meaningful judicial review. Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). Accordingly, the undersigned **FINDS** the RFC analysis is not supported by substantial evidence, as it lacks any explanation for omitting the Plaintiff's mild mental limitations as set forth in step 2.[8]

To the extent the Commissioner argues that mild mental limitations have no bearing on a claimant's ability to return to skilled or semiskilled work, the undersigned declines to analyze this ground for error, given that the RFC does not address this issue – which again, only leaves the Court having to speculate.

---

[8] The undersigned considered the Commissioner's argument that this Court has also found no error when an adjudicator does not go beyond step two to explain why mild mental functional limitations are omitted from an RFC as discussed in *Laura S. v. Kijakazi*, 2023 WL 6144853, at *10-11 (S.D.W. Va. Aug. 31, 2023)(Tinsley, M.J.), *report and recommendation adopted*, 2023 WL 6142362 (S.D.W. Va. Sept. 20, 2023)(Copenhaver, J.) (ECF No. 6 at 15-16). While the argument is compelling, there are, once again, notable differences between the case at bar and *Laura S.*: the ALJ in the case *sub judice* only found mild limitations in the Plaintiff's ability in adapting or managing oneself, whereas the state agency psychological consultants both found the Plaintiff had no limitation in this area of functioning, but mild limitations in the remaining three areas of functioning (Tr. at 19). This deviation warrants an explanation as to why it was omitted from the RFC assessment. Of further interest here, in *Karen W.*, the adjudicator found the same limitations in two areas of mental functioning as the state agency psychological consultants, but failed to address why those limitations were omitted from the RFC assessment.

Finally, the undersigned **FINDS** the final decision of the Commissioner denying benefits is not supported by substantial evidence.

<u>**Recommendations for Disposition**</u>

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Judge confirm and accept the foregoing findings and **RECOMMENDED** that the District Judge **GRANT** the Plaintiff's request for remand (ECF No. 5), **DENY** the Defendant's request to affirm the decision (ECF No. 6), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings so that the ALJ may further consider any work-limiting effects from the Plaintiff's mental impairments.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 106

S.Ct. 466, 475, 88 L.E.2d 435 (1985), <u>reh'g denied</u>, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); <u>Wright v. Collins</u>, 766 F.2d 841 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir.), <u>cert. denied</u>, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: January 26, 2024.



Omar J. Aboulhosn
United States Magistrate Judge